THE STATE, EX REL. JACKMAN ET AL., APPELLEES, *v.* COURT OF COMMON PLEAS OF CUYAHOGA COUNTY ET AL., APPELLANTS.

(No. 40444—Decided March 22, 1967.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Dennis J. McGuire,* for appellees.

*Mr. Bernard A. Berkman, Mr. Fred H. Mandel* and *Mr. James R. Willis,* for appellants.

HERBERT, J.  At the outset, the case at bar should be distinguished from *State, ex rel. Staton,* v. *Common Pleas Court of Franklin County,* 5 Ohio St. 2d 17 (1965), where this court held:

"1. The jurisdiction of the Court of Appeals to issue a writ of prohibition does not extend to an interlocutory matter arising during the proceedings in a cause before an inferior tribunal, which has jurisdiction of the cause, unless such interlocutory matter involves a usurpation of judicial power."

In *Staton,* the question was whether the trial judge abused his discretion *under the circumstances* in ordering the relatrix to submit to a neurological and psychiatric examination.  The question here is whether the trial judge has the *power* to commission pretrial discovery depositions in a criminal case.  The question here is not one of good judgment but of strict power.

Moreover, it affirmatively appears that relators have no plain and adequate remedy in the ordinary course of the law.  If the alleged usurpation of judicial power were to result in some undue advantage to the defendants in the criminal prosecution, and if the defendants were to be acquitted, the double jeopardy provision of Section 10, Article I of the Ohio Constitution, would preclude the state from trying the defendants a second time.  See *State* v. *Baxter,* 89 Ohio St. 269 (1914).  Hence, appeal would not be an adequate remedy.  Nor would any remedy in the Common Pleas Court of Cuyahoga County be appropriate, since it is that court's action that is being challenged.

Therefore, since the relators seek to prevent an alleged usurpation of judicial power and are without a plain and adequate remedy in the ordinary course of the law, resort to the writ of prohibition was correct by any standard that this court has fashioned for extraordinary remedies.  Compare *State, ex rel. Central Service Station, Inc.,* v. *Masheter, Dir. of Hwys.,* 7 Ohio St. 2d 1 (1966), and *State, ex rel. Sibarco Corp.,* v. *Berea,* 7 Ohio St. 2d 85 (1966), with *State, ex rel. Tempero,* v. *Colopy et al., Judges,* 173 Ohio St. 122 (1962).

On the merits, the relators squarely challenge the validity of amended Section 2945.50 of the Revised Code, effective October 13, 1965.  That section reads as follows:

"At any time after an issue of fact is joined upon an in-

dictment, information, or an affidavit, the prosecution or the defendant may apply in writing to the court in which such indictment, information, or affidavit is pending for a commission to take the depositions of any witness. The court or a judge thereof may grant such commission and make an order stating in what manner and for what length of time notice shall be given to the prosecution or to the defendant, before such witness shall be examined.''

There is no dispute that the above section purports to authorize a trial court to commission the taking of pretrial discovery depositions. The relators contend that a statute so broadly drawn transgresses Section 10, Article I of the Ohio Constitution, which states in pertinent part:

''* * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. * * *''

However, when an enactment of the General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality. See *American Cancer Society, Inc.*, v. *Dayton*, 160 Ohio St. 114, 121 (1953). The legal duty imposed upon the judiciary was succinctly stated in paragraph one of the syllabus in *State, ex rel. Dickman*, v. *Defenbacher, Dir.*, 164 Ohio St. 142 (1955):

''An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.''

That duty applies both to the General Assembly of Ohio

and to the federal Congress. However, it should be noted that the federal Constitution is a *grant* of power to the Congress, while the state Constitution is primarily a *limitation* on legislative power of the General Assembly. It follows that the General Assembly may pass any law unless it is specifically prohibited by the state or federal Constitutions. *McNab* v. *Board of Park Commrs.*, 108 Ohio St. 497, 501 (1923); *Fisher Bros. Co.* v. *Brown, Secy. of State*, 111 Ohio St. 602, 625 (1924); *State, ex rel. Youngstown*, v. *Jones, Auditor*, 136 Ohio St. 130, 133 (1939); *State, ex rel. Brunenkant*, v. *Wallace, Registrar*, 137 Ohio St. 379, 383 (1940); *Angell* v. *Toledo*, 153 Ohio St. 179, 181 (1950). See *Cass* v. *Dillon*, 2 Ohio St. 607 (1853).

An excellent summary of these principles of law was made by the court in *State, ex rel.,* v. *Jones, Auditor*, 51 Ohio St. 492, 503, 504 (1894):

"In determining whether an act of the Legislature is or is not in conflict with the Constitution, it is a settled rule, that the presumption is in favor of the validity of the law. The legislative power of the state is vested in the General Assembly, and *whatever limitation is placed upon the exercise of that plenary grant of power must be found in clear prohibition by the Constitution.* The legislative power will generally be deemed ample to authorize the enactment of a law, unless the legislative discretion has been qualified or restricted by the Constitution in reference to the subject matter in question. If the constitutionality of the law is involved in doubt, that doubt must be resolved in favor of the legislative power. The power to legislate for all the requirements of civil government is the rule, while a restriction upon the exercise of that power in a particular case is the exception." (Emphasis added.)

Therefore, although without specific authorization in the Ohio Constitution, the General Assembly has enacted provisions permitting the trial court to commission discovery depositions in civil cases (Section 2319.14, Revised Code) and also to compel parties to produce pertinent documents (Section 2317.32, Revised Code). Even in criminal cases the General Assembly has authorized discovery practices without a constitutional grant of authority on the subject. Section 2945.58 of the Revised Code requires that a defendant file a notice of intention to

claim an alibi not less than three days prior to the trial. No one has yet contended that such provisions are unconstitutional. See Section 1, Article II, Ohio Constitution.

Our decision then must hinge on the answer to these questions: Does Section 10, Article I of the Ohio Constitution, clearly prohibit pretrial discovery depositions in criminal cases? Can Section 2945.50 of the Revised Code be rationally reconciled with the constitutional provision?

The language of Section 10, Article I, quoted earlier in the opinion, permits the Legislature to enact laws allowing the state and the defendant to take depositions to perpetuate the testimony of a witness ''whose attendance cannot be had at the trial,'' provided that the accused is afforded the right of confrontation that has always been his at trial in Ohio since the time of the 1802 Constitution.

Certainly, Section 10, Article I, does not *expressly* prohibit anything other than the denial of the right of confrontation in respect to depositions to perpetuate testimony. It does not *expressly* prohibit discovery depositions. However, under *Cass v. Dillon, supra* (2 Ohio St. 607), a prohibition may arise by ''necessary and obvious'' implication.

The relators claim such implication. The Court of Appeals, in its opinion, said that Section 10, Article I, ''must be interpreted as excluding all other situations, such as pretrial discovery procedure, which might be thought of for taking depositions in criminal cases. The doctrine of '*expressio unius est exclusio alterius*' clearly applies here, supported by the historical background of this question as cited.''

Since the legislative power of the General Assembly is plenary, the judiciary must proceed with much caution in applying the above maxim to invalidate legislation. See *Karrick v. Board of Education*, 174 Ohio St. 73, *reversed on rehearing*, 174 Ohio St. 467 (1963). There, the court was required to interpret Section 10, Article XV of the Ohio Constitution, which set down certain restrictions for ''the civil service of the state, the several counties, and cities.'' Could the General Assembly then extend civil service jurisdiction to school districts as well? In the court's first opinion, the court answered in the negative, relying heavily on the maxim of *expressio unius est exclusio*

*alterius.* But in the second opinion the court rectified its decision and held that, in view of the General Assembly's plenary power to legislate, it could extend the civil service to school districts; and, in fact, it could do so without the restrictions mentioned in Section 10, Article XV. The *Karrick* lesson is invaluable in deciding the case at bar.

Thus, when the General Assembly has full power to legislate in a field that has natural subclasses (A, B, C, D, etc.) and a constitutional provision puts restrictions on subclasses A, B and C, that does not mean (under application of the doctrine of *expressio unius est exclusio alterius*) that the constitutional provision has removed the power to legislate as to subclass D. Rather, it means that the power to legislate as to subclass D is not restricted.

Thus, when the General Assembly has full power under Section 1, Article II, to legislate on the taking of depositions, and Section 10, Article I, says that depositions may be taken to perpetuate testimony with the restriction that they may be used at trial only if the accused is afforded the right of confrontation, that does not mean that the General Assembly no longer has the constitutional power to provide for some other kind of depositions.

The *Karrick* analysis is in harmony with the law of other jurisdictions, as is made clear in 16 Corpus Juris Secundum 89, Constitutional Law, Section 21, which states that the maxim, *expressio unius est exclusio alterius,* "should be applied with caution to provisions of constitutions relating to the legislative branch of the government, since it cannot be made to restrict the plenary power of the Legislature."

Moreover, the maxim, *expressio unius est exclusio alterius,* is not a rule of law but rather a rule of construction used as a tool to cut through ambiguities to lay bare the intendment of a provision. *State, ex rel. Curtis,* v. *DeCorps, Dir. of Pub. Service,* 134 Ohio St. 295 (1938). It follows that such a tool must be put aside when contrary facts and circumstances are known. See 16 American Jurisprudence 2d 252, Constitutional Law, Section 73.

Such contrary facts and circumstances surrounding the framing of the provision of Section 10, Article I, which concerns

the taking of depositions, are revealed by a study of the Proceedings and Debates of the Constitutional Convention of 1912. This court has referred to these Debates in the past to uncover the intendment of a constitutional provision. *E. g., State, ex rel. Boyd*, v. *Tracy, Auditor*, 128 Ohio St. 242, 251 (1934).

In 1869, the General Assembly exercised its plenary power to enact the first statute on depositions in criminal cases, 3 Sayler's Statutes, Chapter 1710, Section 144 (66 Ohio Laws 287, 308). That statute was amended in 1873, 4 Sayler's Statutes, Chapter 2511 (70 Ohio Laws 145), by adding a provision for witnesses confined in prison so that it read as follows:

"Section 144. Where any issue of fact is joined on any indictment, and any material witness for the defendant resides out of the state, or residing within the state is sick or infirm, or is about to leave the state, or is confined in any prison of the state, such defendant may apply in writing to the court in term time, or the judge thereof in vacation, for a commission to examine such witness upon interrogatories thereto annexed; and such court or judge may grant the same, and order what and for how long a time notice shall be given the prosecuting attorney before such witness shall be examined."

This statute was in force as Section 13668, General Code, when the Constitutional Convention met in 1912. A reading of the Debates reveals that the delegates were disturbed by the fact that the statute permitted only the accused to perpetuate the testimony of absent witnesses. The delegates desired to give the state an equal privilege, and yet they were deeply concerned with the accused's long-recognized right of confrontation which they wished to preserve in its pristine force. A brief reference to the remarks of Delegate Riley who authored the amendment concerning depositions will make that clear:

"* * * For a long time it has been possible for a person charged with crime in any degree to take depositions, but there has been no provision in Ohio for depositions to be taken on behalf of the state under any circumstances. We do not propose to change the rule that the defendant shall be brought face to face with his accusers, but we do think where it is possible the state should be allowed to take depositions * * *.

"* * * So the first provision in this proposal is to provide

for the taking of depositions on behalf of the state when the defendant's presence can be procured so as to comply with the old rule of bringing the defendant face to face with his accusers." 2 Proceedings and Debates 1593-94.

"* * * This is a proposal to amend the Bill of Rights, Article I, Section 10. One of the provisions of the Bill of Rights is that a criminal accused of crime shall be confronted by his witnesses. The language of some constitutions is 'brought face to face with the witnesses.' Now for a long time, perhaps ever since the criminal was permitted to testify, he has been permitted to take depositions, but there has been no provision for taking depositions on behalf of the state. That never appealed to any one, certainly, as a square deal or as a fair thing. If it is proper to prosecute crime at all it is proper to give society and the state some chance as well as the defendant. This proposal provides that the Legislature may provide for taking depositions of witnesses on behalf of the state when the presence of the defendant can be secured at the place with his counsel." 2 Proceedings and Debates 1697.

It is clear from the remarks of Riley and others that the delegates sought to equalize the deposition practice in criminal cases and to indicate that this could be done without compromising the "old" right of confrontation. It is clear that the range of their inquiry was the use of depositions *by the state* at trial. They did not consider the question of discovery depositions.

Since we do not find a "clear prohibtion" of pretrial discovery depositions in Section 10, Article I of the Ohio Constitution, and since it does not "appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible," the conclusion is inescapable that the Court of Appeals erred in holding that Section 2945.50 of the Revised Code violated Section 10, Article I of the Ohio Constitution.

The Court of Appeals also held Section 2945.50 to be repugnant to Section 1, Article II of the Ohio Constitution, which declares that "the legislative power of the state shall be vested in a General Assembly." The reasoning of the Court of Appeals was that since the General Assembly legislated that the court "may" grant a commission to take depositions although it did not also set down guidelines in the statute for the court

to follow, the General Assembly had necessarily passed on a legislative function to the judiciary. It should be noted that if that were true, certain present discovery practices in civil cases would also be invalid. Section 2319.14 of the Revised Code states that a court *"may grant a commission* to take depositions within or without the state * * * upon written interrogatories unless the parties otherwise agree.'' (Emphasis added.) That power has resided in the courts since the first meeting of the General Assembly under the 1851 Constitution (51 Ohio Laws 113, Section 343), and yet this is the first time to our knowledge that its validity has been doubted.

We do not believe that the phrase, "may grant," which appears in both Section 2945.50 and Section 2319.14 of the Revised Code indicates that the trial court has been delegated an *"absolute, uncontrolled discretion"* to determine in what cases discovery depositions may be taken, as the Court of Appeals said. (Emphasis added.) Rather, that phrase means that the trial court must consider the merits of an application for a commission in accordance with certain rules that the law has already fashioned in the discovery area.

Section 2945.50 is not the law's first attempt at discovery depositions. Although it is relatively new, it rests on a sound foundation of case law and statutes. Guidelines have already been established. The void that the Court of Appeals postulated does not exist.

In a civil action, where the party seeking to take depositions is abusing the discovery process by acting in bad faith, by attempting to harass or oppress witnesses or parties, or by searching for privileged information, the court may interfere to issue a protective order. *E. g., State, ex rel. McGaughey,* v. *Cost,* 10 Dec. Rep. 619, 624 (Common Pleas 1889); *In re Robinson,* 7 N. P. 105 (1900); *National Cash Register Co.* v. *Heyne,* 10 N. P. (N. S.), 465 (1910). It would seem that where a party uses the discovery process merely to obtain extremely remote information, *cf. Ornstein* v. *Chesapeake and Ohio Rd. Co.,* 11 Ohio Opinions 129, 133 (Court of Appeals 1937), or merely to delay the proceedings, he is likewise abusing the discovery process. The civil guidelines are available to the presiding judge in the trial of criminal causes. Section 2945.41 of the

Revised Code. He is clothed with the same discretion as is the judge in a civil cause.

Moreover, the statutes themselves provide further guidelines to aid the court in deciding on an application. Companion Sections 2945.52 and 2945.53 accord to the accused the right of confrontation and the right to counsel "in all cases in which depositions are taken." It is thus the duty of the trial court to assure those rights to the accused or, conversely, to preclude deposition-taking where those rights cannot be accorded to the accused.

Moreover, in the light of Sections 2945.51, 2945.52, 2945.53 and 2945.54 of the Revised Code—all of which concern the possible payment of expenses out of the treasury—a trial court has the duty to determine whether, under the circumstances, the taking of depositions would serve the administration of justice.

Since we are unable to find anything resembling a "clear prohibition" of such discretion in Section 1, Article II of the Ohio Constitution, and since it does not "appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatiable," we must conclude that the judgment of the Court of Appeals holding that Section 2945.50 constituted an unlawful delegation of legislative power was erroneous.

The judgment of the Court of Appeals is therefore reversed, and the writ of prohibition is denied.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.