VILLAGE OF MONROEVILLE, APPELLEE, *v.* WARD, APPELLANT.
(Two cases.)

(Nos. 805 and 806—Decided December 31, 1969.)

*Messrs. Berkman, Gordon & Kancelbaum* and *Mr. Niki Z. Schwartz,* for appellant.
*Mr. Franklin D. Eckstein,* for appellee.

POTTER, J. These are appeals on questions of law from the Huron County Common Pleas Court wherein convictions in the mayor's court of Monroeville were sustained. Defendant, Clarence Ward, was charged with violating Sections 2 and 29, Ordinance 47-12 of the village of Monroeville, in that he failed to comply with a lawful order of a police officer and failed to produce a driver's license on request of the police officer. Defendant moved to dismiss the charges or in the alternative to certify the cases to a proper court on the ground that the mayor before whom the cause was to be tried in Monroeville could not sit as a disinterested and impartial tribunal.

During the oral argument before this Court of Appeals, the court inquired whether the amendment of Section 4 (B), Article IV of the Ohio Constitution, adopted on May 7, 1968, as part of the "Modern Courts Amendment," deprived the General Assembly of power to confer appel-

late jurisdiction on the Common Pleas Court to review the judgment of the mayor's court. The parties cannot confer, by consent, jurisdiction on the Common Pleas Court or this court, and an appellate court must take notice of its own want of jurisdiction. 14 Ohio Jurisprudence 2d 542, Courts, Section 127; 4 American Jurisprudence 2d 539, Appeal and Error, Section 9; 20 American Jurisprudence 2d 455, 459, Courts, Sections 95 and 99. To the court's question, scholarly supplemental briefs have been filed by counsel.

Section 4 (B), Article IV, as amended, is set forth below:

"(B) the courts of common pleas shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

The section prior to amendment read as follows:

"The jurisdiction of the Courts of Common Pleas, and of the Judges thereof shall be fixed by law."

The case of *Stone* v. *Goolsby* (Common Pleas, Franklin County, 1969), 18 Ohio Misc. 105, is to the effect that the amendment of Division (B) of Section 4, Article IV of the Ohio Constitution confers jurisdiction upon the Courts of Common Pleas to review proceedings of administrative officers and agencies, but the section makes no provision for the conferring of jurisdiction upon Courts of Common Pleas to review proceedings of Municipal Courts. It held that jurisdiction to review judgments of courts of record inferior to Courts of Appeals, including Municipal Courts, is vested by the Constitution solely in the Courts of Appeals. This conclusion was reached by the application of the doctrine of *expressio unius est exclusio alterius.* That court stated that it was not unmindful of the principle that the Ohio Constitution, in general, constitutes a limitation of the power of the General Assembly rather than a delegation of power to it. However, it held that Article IV of the Ohio Constitution, as amended, specifically deals with the manner in which the judicial power of the state shall be distributed and exercised and now constitutes a limitation upon the general legislative power con-

ferred upon the General Assembly by Section 1, Article II of the Ohio Constitution. It held that since May 7, 1968, that part of Section 1901.30(A), Revised Code, which grants an option to appeal from the Municipal Court to the Common Pleas Court is in conflict with Division (B) of Section 4, Article IV of the Ohio Constitution, and is, therefore, void. The logical extension of the reasoning in the *Stone case, supra,* would be to deny all appeals from Municipal Courts, police courts, County Courts and mayors' courts to the Common Pleas Courts. See Sections 1901.30, 1905.22, 1921.01, 2305.01, and 2953.02, Revised Code; and also Sections 1923.12 (Forcible Entry and Detainer) and 2933.06 (Complaint to Keep the Peace), Revised Code.

Both the plaintiff and the defendant in the *Monroeville case* came to the conclusion that *Stone* v. *Goolsby*, 18 Ohio Misc. 105, is not good law. The defendant lists three reasons supporting his right to appeal to the Common Pleas Court: (1) Section 4 (B), Article IV, was not adopted by the electorate on May 7, 1968; (2) "Article IV, Section 4 (B) of the Ohio Constitution violates appellant's rights to equal protection of the laws and due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and is therefore void"; and (3) "Article IV, Section 4 (B) need not be construed to deprive the General Assembly of power to confer appellate jurisdiction upon the Common Pleas Court."

The language of the condensed text of the "Modern Courts Amendment," which appeared on the ballot on May 7, 1968, is as follows:

"Shall the Constitution of the state of Ohio be amended by amending Sections 1 and 2, enacting Sections 3, 4, 5 and 6 and repealing existing Sections 3, 4, 6, 7, 8, 10, 12 and 14 of Article IV and by repealing Sections 12 and 13 of Article XI as adopted in 1851 to provide that the Supreme Court shall decide all cases by majority vote, to fix the power of the Supreme Court of Ohio to exercise administrative supervision over all courts and to make rules of practice and procedure, to prohibit the election or appointment to any judicial office of a person who shall have pass-

ed the age of 70 years, to equalize judges' salaries and to allow increases in compensation during term, to remove the Probate Court as a constitutional court and to authorize the consolidation of county Probate Courts and Courts of Common Pleas?''

Defendant argues in support of reason number (1) that the ballot summary failed to give the voters information as to the alleged changes affecting the right of appeal from inferior courts to the Common Pleas Courts and, therefore, cannot be said to have been adopted by the electorate. *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65.

A review of the legislative history of the Act would indicate that originally all courts were to be combined in a single Common Pleas Court. Opponents of the unified Common Pleas Court plan succeeded in eliminating this feature from the ''Modern Courts Amendment.'' However, Section 4 (B), Article IV, was not redrafted. Defendant alleges that this inadvertence was corrected, however, by the fact that the unintended consequences thereof were not presented to the voters and, hence, not adopted.

In support of the second reason defendant argues that if *Stone* v. *Goolsby*, 18 Ohio Misc. 105, is correct, then there is no right of appeal from the decision of the mayor's court to any court. This is the holding in *Village of Commercial Point* v. *Branson*, 20 Ohio Misc. 66, and *Greenhills* v. *Miller*, 20 Ohio App. 2d 313, both of which were reported after the submission of this case. Defendant contends that to deny a right of appeal from the mayor's court would be a violation of the equal protection clause of the Fourteenth Amendment. Parties convicted of similar offenses, *i. e.*, in a Municipal Court, could appeal, whereas there could be no appeal from such a conviction in a mayor's court. It is suggested that there is a greater need to provide for an appeal from a mayor's court than from a County or Municipal Court.

The third reason of defendant's triad is that Section 4 (B), Article IV, need not be construed to deprive the General Assembly of power to confer appellate jurisdiction upon the Common Pleas Court. Defendant contends

the following: (1), the state Constitution, unlike the federal Constitution, is a limitation of power rather than a grant of power and (2) plenary legislative power is vested in the General Assembly by Section 1, Article II of the Ohio Constitution; thus, even though Section 4 (B), Article IV, does not grant power to the General Assembly to vest appellate jurisdiction in the Common Pleas Court, this power may be derived from Section 1, Article II. Plaintiff joins defendant in this argument, and both counsel stressed the remedial effect of Section 1, Article II of the Ohio Constitution. Reliance by both is placed on the recent case of *State, ex rel. Jackman,* v. *Court of Common Pleas of Cuyahoga County* (1967), 9 Ohio St. 2d 159. The *Jackman case* involved an application by defendants through their attorneys for a commission to take depositions of certain witnesses. The trial judge announced his intention to grant the application. Thereafter, five of the named witnesses filed an action in prohibition in the Court of Appeals seeking a writ to prohibit the trial judge from entering the above order in the journal. The Court of Appeals issued the writ, holding that amended Section 2945.50, Revised Code, which authorized the trial judge's intended action, violated Section 10, Article I of the Ohio Constitution, and also constituted an unlawful delegation of legislative powers to the trial court. The court, in 9 Ohio St. 2d 159, overruled the appeals court and made some observations which we think are pertinent to this case and are hereinafter referred to.

In reference to point number (1), the ballot summary, there is no specific requirement as to what the summary must contain so long as the condensed text properly describes the question, issue or amendment. See *State, ex rel. Foreman,* v. *Brown,* 10 Ohio St. 2d 139. Considering ballot space limitations, the summary was adequate and the amendment was properly presented.

To hold that there is no right of appeal from a mayor's court would require the finding that Sections 1905.22 and 1921.01, Revised Code, are repealed by implication. Such repeals are not favored, and the inconsistency must be

22

obvious, clear and strong. 10 Ohio Jurisprudence 2d 185, Constitutional Law, Section 103. It is the duty of the court to reconcile statutes with the state and federal Constitutions, and the delicate question of unconstitutionality should seldom be decided affirmatively in a doubtful case. *State, ex rel. Dickman, v. Defenbacher, Dir.* (1955), 164 Ohio St. 142. An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear, beyond a reasonable doubt, that the legislation and constitutional provisions are clearly incompatible. See *State, ex rel. Jackman, v. Court of Common Pleas,* 9 Ohio St. 2d 159. The Supreme Court of Ohio in that case says at page 162:

" * * * It follows that the General Assembly may pass any law unless it is specifically prohibited by the state or federal Constitutions. * * *"

The court, at page 162, quotes from *State, ex rel.,* v. *Jones, Auditor,* 51 Ohio St. 492, and reaffirmed the principle that:

" " * * * *whatever limitation is placed upon the exercise of that plenary grant of power must be found in a clear prohibition by the Constitution.* The legislative power will generally be deemed ample to authorize enactment of a law, unless the legislative discretion has been qualified or restricted by the constitution in reference to the subject matter in question. If the constitutionality of the law is involved in doubt, that doubt must be resolved in favor of the legislative power. * * *" "

Discussing the doctrine of *expressio unius est exclusio alterius* the court stated that since the legislative power of the General Assembly is plenary the judiciary must proceed with much caution in applying the above maxim to invalidate legislation. It also observed that the maxim *expressio unius est exclusio alterius* is not a rule of law but rather a rule of construction. The purpose is to cut through ambiguities to lay bare the intendment of a provision. When contrary fact and circumstances are known, the rule does not apply. In the instant case it is apparent that the facts and circumstances are known from a study of the proceedings of the Modern Courts Committee of

the Ohio State Bar Association; and, further, more than one section of the Constitution is under consideration.

The appeal provisions of the mayor's court are found in that section of the Code creating the court. The constitutional fountainhead is Section 1, Article IV, which is as follows:

"The judicial power of the state is vested in a supreme court, courts of appeal, courts of common pleas, and such other courts inferior to the supreme court as may from time to time be established by law."

That section was also adopted at the same time as Section 4 (B), Article IV. These sections must be read *in pari materia*. The General Assembly is clearly granted the power to create courts inferior to the Supreme Court. There is no limitation here on the General Assembly. The power to create a court carries with it the power to determine its jurisdiction and provide for its maintenance. *State, ex rel. Ramey,* v. *Davis,* 119 Ohio St. 596. This section is as broad as was the old Section 4, Article IV, and may be augmented by acts of the General Assembly. See *Stevens* v. *State,* 3 Ohio St. 453, at page 455, in reference to the former Section 4, as follows:

"The constitution itself confers no jurisdiction whatever upon the court either in civil or criminal cases. It is given a capacity to receive jurisdiction in all such cases, but it can exercise none until 'fixed by law.' "

Under Section 1, Article IV, the General Assembly may provide for the review of proceedings of inferior courts, which it has the power to create, unless there is a "clear prohibition by the Constitution." See the *Jackman case, supra,* page 162 (of 9 Ohio St. 2d), and *State, ex rel.,* v. *Jones, Auditor,* 51 Ohio St. 492.

In *Price* v. *McCoy Sales & Service, Inc.,* 2 Ohio St. 2d 131, overruling *Green* v. *Acacia Mutual Life Ins. Co.,* 156 Ohio St. 1, the words of Judge Taft, now Chief Justice, in *Gray* v. *Youngstown Municipal Ry. Co.,* 160 Ohio St. 511, at page 520, were reiterated. They are:

"Appellate procedure is a branch of the law where *simplicity, clarity* and *consistency* are especially important."

We also note the admonition of Chief Justice Weygandt in *Youngstown Municipal Ry. Co.,* v. *Youngstown,* 147 Ohio St. 221, at page 223, as follows:

"To so construe the amendment would imply an intention on the part of its proponents to precipitate chaos in the appellate courts of this state at a time when there could be no relief therefrom unless the General Assembly might see fit to take action. There would be no possibility of taking a case from the trial court to either the Court of Appeals or this court. It seems highly improbable that so fantastic a result was intended; and a careful study of the amendment in its entirety, as there must be, so discloses. * * *"

We hold that there is no clear prohibition of the historical review by the Common Pleas Court of proceedings of a mayor's court, nor are the constitutional provisions, construed *in pari materia,* clearly incompatible with the statutes so providing.

To hold that there is no such right of appeal would necessitate the finding that since the mayor's court is not a court of record there would be no right of any appeal from that court. While an appeal is not a constitutional right, yet parties equally situated would be denied the equal protection of the law. A party accused of a similar violation and tried in a County Court or Municipal Court could appeal to an appellate court, but a defendant in a mayor's court would have no appeal except perhaps an illusory one to the Supreme Court of the United States. *Thompson* v. *Louisville,* 362 U. S. 199. The argument that the Fourteenth Amendment invalidates Section 4 (B), Article IV, as now set forth and reinstates the previous section would then have validity. See *State* v. *Howell* (1965), 4 Ohio St. 2d 11; *Griffin* v. *California,* 380 U. S. 609; 16 American Jurisprudence 2d 266, Section 54; and 16 Corpus Juris Secundum 185, Constitutional Law, Section 68, to the effect that a state constitutional amendment which conflicts with a federal constitutional guaranty is invalid. Construing all the sections of the Ohio Constitution, as adopted May 7, 1968, and giving each vitality, we avoid this finding. Finding that there is a right of appeal

from the Mayor's Court of Monroeville to the Huron County Common Pleas Court, we now consider the assignment of error as set forth in the brief of appellant, defendant below.

Defendant alleges error in that he was compelled to stand trial before a mayor who, by reason of his executive position and responsibilities, could not be a disinterested and impartial judicial officer.

Defendant relies primarily on the cases of *Tumey* v. *Ohio*, 273 U. S. 510, and *Dugan* v. *Ohio*, 277 U. S. 61. The *Tumey case* involved a unique method of enforcing the prohibition act. The mayor's court and others were given county-wide jurisdiction. Money arising from fines and forfeited bonds was paid one-half into the state treasury and one-half to the township, municipality or county treasury wherein the prosecution was held. The village of North College Hill then provided for a percentage of the funds received to be distributed to deputy marshals of the villages, prosecuting attorneys, and detective and secret service officers. The mayor, in addition to his regular salary, received the amount of the costs in each case. This, of course, depended on a conviction. The Supreme Court found that this procedure violated the Fourteenth Amendment.

Defendant argues that, although in the instant case the mayor does not receive the costs, his concern for the financial condition of his village which received the fines is inconsistent with judicial impartiality. The *Dugan case* held that the Fourteenth Amendment was not violated where the mayor did not receive the costs and his salary was the same whether the trial before him resulted in conviction or acquittal. His relation to the fund and the financial policy of the city was too remote to warrant a presumption of bias toward conviction.

Defendant endeavors to distinguish that case on the ground that the mayor in the *Dugan case* did not exercise executive power under the applicable commission form of government. Before applying the above cases, it is appropriate to point out that subsequent statutory amendments have placed severe limitations on the mayor's court. See Section 1905.01, Revised Code:

"* * * the mayor of such municipal corporation has jurisdiction to hear and determine any prosecution for the violation of an ordinance of the municipal corporation, and has jurisdiction in all criminal causes involving moving traffic violations occurring on state highways located within the boundaries of the municipal corporation, subject to the limitations of Sections 2937.08 and 2938.04 of the Revised Code."

See, also, Section 1907.031, Revised Code. This, we think, brings the case within the statement of the court in *Tumey, supra,* at page 534, which we quote below:

"* * * It is, of course, so common to vest the mayor of villages with inferior judicial functions that the mere union of the executive power and the judicial power in him can not be said to violate due process of law. The minor penalties usually attaching to the ordinances of a village council, or to the misdemeanors in which the mayor may pronounce final judgment without a jury, do not involve any such addition to the revenue of the village as to justify the fear that the mayor would be influenced in his judicial judgment by that fact. The difference between such a case and the plan and operation of the statutes before us is so plain as not to call for further elaboration."

Although in the instant case the revenue from the mayor's court was sizable, nevertheless, we think there was no violation of due process. If all mayor's courts are to be abolished, that is a decision for the General Assembly and not this court.

The assignment of error in this respect is not well taken.

Further, we find the branch of the assignment of error asserting that the mayor's executive responsibility impaired his judicial impartiality to pass upon the credibility of police witnesses is also not well taken.

The judgments of the Common Pleas Court of Huron County are affirmed and the causes are remanded to the Mayor's Court of Monroeville for execution of sentence.

*Judgments affirmed.*

BROWN, P. J., and STRAUB, J., concur.