OHIO BUREAU OF MOTOR VEHICLES *v.*
HILL.

(No. 84 FRL 402—Decided January 18,
1984.)

Cleveland Municipal Court.

*Ms. Carolyn L. Carter,* for defendant.

ADRINE, J. The defendant herein, Darrell Hill, urges the court that R.C. 4509.101 is unconstitutional and, therefore, that these proceedings instituted to enforce its provisions are improper and should be dismissed. The main thrust of the defendant's argument is found in the first paragraph of his brief in support of his motion to dismiss, in which he maintains "that this statute is * * * a violation of the principle of separation of powers."

In light of this allegation, it is appropriate here for the court to examine the constitutional schematics of the separation of powers in Ohio and to apply its findings to the challenged statute in determining the validity of the defendant's position.

I

R.C. 4509.101 and the Role of the Court

The defendant was charged with a traffic offense which required his appearance in court, and which thus brings him under the purview of the provisions of R.C. 4509.101. He appeared before the court as required by the statute at a hearing to establish proof of his financial responsibility.

On March 18, 1983, Am. Sub. S. B. No. 250 became law in the state of Ohio. It was designed to make R.C. Chapter 4509, which requires financial responsibility from all motor vehicle operators and owners, more effective.

As part of that Act, the legislature promulgated R.C. 4509.101. Division (J) of that section sets forth its principal purpose as follows:

"The purpose of this section is to encourage the maintenance of proof of financial responsibility with respect to operation of motor vehicles on the highways of this state, so as to minimize those situations in which persons are not compensated for injuries and damages sustained in motor vehicle accidents. The general assembly finds that this section contains reasonable penalties and procedures for achieving this purpose."

Division (A) of the section sets forth the conduct which it seeks to proscribe:

"No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to his operation of that vehicle."

Division (B)(1) of the section enjoins certain mandatory functions upon the court:

"* * * If, as the result of the defendant's failure to show such proof of financial responsibility at his appearance or subsequent appearance, the court determines that the defendant has violated

division (A) of this section, the court shall do all of the following:

"(a) Order the impoundment of the certificate of registration and registration plates of the motor vehicle involved in the traffic offense, if the defendant is the owner of the motor vehicle;

"(b) Order the suspension for ninety days of the license of the defendant;

"(c) Impose court costs, to be paid by the defendant in an amount not to exceed fifteen dollars;

"(d) Retain any proof of financial responsibility presented to the court by the defendant as a part of the record in the case and forward it to the registrar of motor vehicles if the defendant perfects an appeal to the registrar under division (B)(6) of this section."

Division (B)(6) of the section expressly sets out the nature of the foregoing mandatory functions under subdivisions (B)(1)(a) and (b):

"The court's order of suspension or impoundment under division (B)(1) of this section is deemed an administrative act of the court on behalf of the Registrar."

Although the Act itself was effective on March 18, 1983, for logistical reasons the General Assembly, in its wisdom, chose to make the effective date of its provisions January 1, 1984.

## II
### Power of the General Assembly re: Courts and Their Jurisdiction

The Constitution of the state of Ohio specifically confers on the General Assembly the power to create courts inferior to the courts of common pleas. Section I, Article IV, Ohio Constitution. With the power to create a court necessarily goes the power to define its jurisdiction. *State, ex rel. Ramey,* v. *Davis* (1929), 119 Ohio St. 596, at 602; *State, ex rel. Attorney General,* v. *Bloch* (1901), 65 Ohio St. 370. Jurisdiction is the subject of an enlightening discourse by Judge Duncan of the Ohio Supreme Court in his dissenting opinion in *Monroeville* v. *Ward* (1971),

27 Ohio St. 2d 179, at 186-187. There, he stated:

"It has long been the law of this state that jurisdiction is the power to hear and determine a cause. *Sheldon's Lessee* v. *Newton* (1854), 3 Ohio St. 494, paragraph one of the syllabus; *Loftus* v. *Pennsylvania Rd. Co.* (1923), 107 Ohio St. 352, 356. Before jurisdiction exists it must be found, *inter alia,* that the law has given the tribunal subject-matter jurisdiction, or the capacity to hear the controversy in question. *Sheldon's Lessee, supra,* paragraph two of the syllabus. The limits and exercise of subject-matter jurisdiction are controlled by the Ohio Constitution and the statutes of the state. *Thompson* v. *Redington* (1915), 92 Ohio St. 101, paragraph one of the syllabus. See *Humphrys* v. *Putnam,* 172 Ohio St. 456, at 460 [17 O.O.2d 424]; *State ex rel. Finley,* v. *Pfeiffer* (1955), 163 Ohio St. 149, 153 [56 O.O. 190]. Cf. *Loftus* v. *Pennsylvania Rd. Co., supra.*"

It is clear from the above discussion that the only restraint upon the legislature's authority to fix the jurisdiction of any court created by statute is the state Constitution itself. *State, ex rel. Attorney General,* v. *Bloch, supra,* at 391; *Humphrys* v. *Putnam, supra,* at 460.

## III
### Separation of Powers in Ohio

The Constitution's prohibition of legislative action need not be explicitly found in the language of that document. In the absence of express constitutional provisions therefore, the General Assembly of Ohio cannot assign to the judicial branch of the government any duties other than those that are properly judicial, to be performed in a judicial manner. *Thompson* v. *Redington, supra,* paragraph two of the syllabus.

The defendant herein alleges that R.C. 4509.101(B)(1) and (6) unconstitutionally require this court to perform nonjudicial functions which properly belong to the executive branch of the state

government and that, to the extent that that is true, those provisions of the statute must fail as unenforceable.

The concept of separation of powers is fundamental to our form of government. Confronted with the problem in the early days of the Republic, Chief Justice John Marshall said:

"This original and supreme will [of the people] organizes the government, and assigns to different departments their respective powers. It may either stop here, or establish certain limits not to be transcended by those departments.

"The government of the United States is of the latter description. The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written. * * *" *Marbury* v. *Madison* (1803), 5 U.S. (1 Cranch) 137, 176.

What may be said of the separation of powers doctrine on the federal level is equally true at the state level in Ohio, with one notable difference. That difference, as stated by the Ohio Supreme Court in *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 162 [38 O.O.2d 404], is "that the federal Constitution is a *grant* of power to the Congress, while the state Constitution is primarily a *limitation* on legislative power of the General Assembly." See, also, *Stone* v. *Goolsby* (1969), 18 Ohio Misc. 105, 108 [17 O.O.2d 206].

An excellent discussion of the concept of separation of powers in Ohio can be found in the Ohio Supreme Court's opinions in *Zanesville* v. *Zanesville Tel. & Tel. Co., infra.* Although the court reversed its first opinion on rehearing the following year, much of the reasoning in the original case, *Zanesville* v. *Zanesville Tel. & Tel. Co.* (1900), 63 Ohio St. 442, 445, concerning the separation of powers, remains sound:

·"There is no positive and specific prohibition in the constitution of Ohio against conferring on any one branch of the government, the duty of another and coordinate branch. It is well settled, however, that the mere distribution of powers between the three departments is of itself such prohibition. *Kilbourn* v. *Thompson,* 103 U.S. 168; * * * [other citations omitted]."

Upon rehearing the *Zanesville* case, the Ohio Supreme Court wrestled with the twin questions of what is a judicial power and how is a judicial power accurately identified. It concluded that:

"* * * conferring on a judicial tribunal in the first instance, the power to act in a given matter, is of controlling importance in giving judicial character to the nature of the power; though that is not necessarily a conclusive test, for if it were the existence of a statute would establish its validity; but it is decisive, in that respect, unless it is reasonably certain that the power belongs exclusively to the legislative or executive department. This court in *State* v. *Harmon,* 31 Ohio St., 250, 259, approved of that principle, as stated by Selden, J., in Cooper's case, 22 N.Y., 84, as follows: 'The principle * * * obviously is, that where any power is conferred upon a court of justice, to be exercised by it as a court, in the manner and with the formalities used in its ordinary proceedings, the action of such court is to be regarded as judicial, irrespective of the original nature of the power. The legislature, by conferring any particular power upon a court, virtually declares that it considers it a power which may be most appropriately exercised under the modes and forms of judicial proceedings.' " *Zanesville* v. *Zanesville Tel. & Tel. Co.* (1901), 64 Ohio St. 67, 84.

In assuming this position, however, the court did not abandon its earlier pronouncement concerning the propriety of the separation of powers. In fact, earlier in the same opinion the court held:

"It is a sound proposition that the distribution of the powers of the state, by the constitution, to the legislative, executive and judicial departments, operates, by implication, as an inhibition

against the imposition upon either, of those powers which distinctly belong to one of the other departments." *Id.* at 73.

Thus the court's opinion on rehearing must be viewed as a logical and consistent refinement of its prior holding.

## IV
## The Court and the Registrar under R.C. 4509.101

Applying the foregoing discussion to the instant situation, the question must be asked, does this statute alter the judicial system established by the Constitution? See *State, ex rel. Attorney General,* v. *Bloch, supra.* If it does, it is clearly unconstitutional. If it does not, then it should withstand the close scrutiny of this court and be enforced.

The court is mindful of the Ohio Supreme Court's admonition, delivered in its opinion in *State, ex rel. Jackman,* v. *Court of Common Pleas, supra,* at 161:

"* * * [w]hen an enactment of the General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality. See *American Cancer Society, Inc.* v. *Dayton,* 160 Ohio St. 114, 121 [51 O.O. 32] (1953). The legal duty imposed upon the judiciary was succinctly stated in paragraph one of the syllabus in *State, ex rel. Dickman,* v. *Defenbacher, Dir.,* 164 Ohio St. 142 [57 O.O. 134] (1955):

" 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislature and the constitutional provisions are clearly incompatible.' "

R.C. Section 4509.101(B)(6) purports to make "[t]he court's order of suspension or impoundment" under the section "an administrative act of the court on behalf of the Registrar" of Motor Vehicles. Appeal from the court's order may be taken to the Registrar of Motor Vehicles, who apparently has the authority to overturn the court's decision. It is these provisions

that give this court pause. Under the explicit language of the statute the court acts on behalf of the registrar. According to the settled rules of statutory construction, this court "may not speculate, apart from the words, as to the probable intent of the Legislature." *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, 236 [36 O.O. 554]. Therefore, the court can only conclude that the General Assembly intended to establish an agency relationship between the registrar and the courts. One of the definitions of an "agent" found in Black's Law Dictionary (5 Ed. 1979), at 59, is: "[o]ne who acts for or in place of another by authority from him."

The additional grant of authority to the registrar to review and, necessarily, to overturn a decision of the court also is troublesome. Such authority clearly establishes the superior and supervisory nature of the registrar's relationship to the courts under the statute.

The court concludes, therefore, that such an agency relationship impermissibly violates the separation of powers under Ohio law. The three branches of our government are coordinate, and no act of the legislature can make any one branch subordinate to either of the other two. *State, ex rel. Finley,* v. *Pfeiffer, supra; State, ex rel. Attorney General,* v. *Peters* (1885), 43 Ohio St. 629, 647; *State, ex rel. Johnston,* v. *Taulbee* (1981), 66 Ohio St. 2d 417, 422 [20 O.O.3d 361], quoting from *Hale* v. *State* (1896), 55 Ohio St. 210, 213-214; *Hoffman* v. *Knollman* (1939), 135 Ohio St. 170, 181 [14 O.O. 7].

To the extent that R.C. 4509.101 attempts to subordinate the courts to the registrar, the answer to the question first asked is, yes, it alters the judicial system established by the Constitution.

## Conclusion

The General Assembly of Ohio has the authority under the state's Constitution to establish courts inferior to the courts of common pleas and to determine their jurisdiction. The power of the General

Assembly in this regard is limited only by the Constitution, and therefore, in some instances it may require such statutory courts to exercise certain non-judicial powers and duties.

Clearly, however, constitutional limits on the assignment of non-judicial duties do exist. The principle of separation of powers prohibits legislative infringement upon the judicial preserve, when such infringement results in the subordination of the judicial branch of government to either the legislative or executive branches.

R.C. 4509.101(B)(1) and (B)(6) are such infringements and cannot be allowed to stand. This court holds that the aforesaid sections of the Revised Code are unconstitutional and, therefore, unenforceable.

*Motion to dismiss sustained.*