BOARD OF EDUCATION, ERIE COUNTY SCHOOL DISTRICT, ET AL., APPELLANTS, *v.* RHODES, GOVERNOR, ET AL., APPELLEES.

(No. 83AP-494—Decided April 12, 1984.)

*Lucas, Prendergast, Albright, Gibson, Newman & Gee, Rankin M. Gibson Co., L.P.A., W. Joseph Strapp Co., L.P.A., Williams & Batchelder* and *William G. Batchelder III,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, *Gary E. Brown* and *Kathleen McManus,* for appellees.

STRAUSBAUGH, J. Plaintiffs bring this appeal from a judgment of the Franklin County Court of Common Pleas granting defendants' motion for judgment on the pleadings and dismissing plaintiffs' complaint.

On November 15, 1981, the 114th General Assembly enacted Am. Sub. H.B. No. 694, the Biennial Appropriations Act for fiscal years 1981-1982 and 1982-1983. Section 25 of Am. Sub. H.B. No. 694 appropriated $2,053,880,366 to the Department of Education from the general revenue fund for public education in fiscal year 1981-1982. A subsection of Section 25 of Am. Sub. H.B. No. 694 titled *"Reallocation of funds"* provides, in pertinent part, as follows:

"(B) If the Superintendent of Public Instruction determines that the amount appropriated to the Department of Education for distribution to school districts under this act and Chapter 3317 of the Revised Code, exclusive of payments to school districts from the Emergency School Advancement Fund,

is insufficient to make all of the payments required under such provisions, or if the Governor issues an order under section 126.08 of the Revised Code to reduce expenditures and incurred obligations and the order requires the Superintendent to reduce such state aid payments to school districts, the Superintendent shall reduce basic and nonbasic aid payments to schools so that the total amount expended in the fiscal year will not exceed either the amount appropriated or the amount available for expenditure pursuant to the Governor's order. * * *''

On January 15, 1982, the Governor issued Executive Order 82-3, pursuant to his alleged authority under R.C. 126.08, which states in part:

"NOW, THEREFORE, I, JAMES A. RHODES, do hereby order the executive department as defined in Article III, Section I [sic] of the Ohio Constitution, the legislative departments, the administrative departments, and all other departments, offices, agencies, institutions, boards and commissions, excepting therefrom the judicial departments, the Public Utilities Commission of Ohio, and the Ohio Consumer's Counsel, and further excepting therefrom appropriations for debt service, the Sagamore Hills Children's Psychiatric Hospital, Dayton Children's Psychiatric Hospital, Central Ohio Adolescent Center, Millcreek Psychiatric Center for Children, pension benefits, the Local Government Fund, Property Tax Rollback and Homestead Exemption, to reduce their expenses by amounts and in the manner as may be determined necessary by the Director of the Office of Budget and Management from time to time to achieve spending reductions to prevent expenditures and incurred obligations from exceeding available revenue receipts and balances during fiscal year 1982.''

As a result of Executive Order 82-3, significant reductions were made in the distribution of funds from the school foundation program to plaintiffs, and to other school districts in the state of Ohio. On November 18, 1982, plaintiffs brought an action for declaratory and injunctive relief against James A. Rhodes, Governor of the state of Ohio, Howard L. Collier, Director of Budget and Management, and Franklin B. Walters, Superintendent of Public Instruction and Executive Officer of the State Board of Education. The complaint was subsequently amended to include a request for a writ of mandamus ordering the defendants to pay out the undistributed portions of the 1981-1982 appropriations for education included in the school foundation program and withheld by the Department of Education pursuant to Executive Order 82-3. In addition, plaintiffs requested that the court certify the case as a class action pursuant to Civ. R. 23(B)(2), with plaintiffs representing all other boards of education within the state whose school foundation revenues had been limited, all taxpayers and citizens of the state of Ohio, and all students enrolled in the public schools of the state of Ohio. Plaintiffs claimed that defendants acted arbitrarily, capriciously and unlawfully when they effectively reduced the funds available through the school foundation program to the plaintiffs and other members of the class for fiscal year 1981-1982.

After filing an answer to the complaint, defendants filed a motion for judgment on the pleadings pursuant to Civ. R. 12(C) and 12(H), which was sustained by the trial court. In its decision, the trial court held that the Governor had been granted the authority by the General Assembly through Am. Sub. H.B. No. 694 to order reductions in payments made to school districts through the school foundation program and R.C. Chapter 3317, and that Executive Order 82-3 was an effective exercise of that authority. Plaintiffs bring

this appeal from the trial court's judgment and raise the following two assignments of error:

"I. The trial court erred in upholding the cuts in the school foundation program resulting from the Executive Order 82-3 because R.C. 126.08 does not grant the governor authority to reduce funds appropriated and allocated to school districts pursuant to the school foundation program under Chapter 3317, Revised Code.

"II. The trial court erred in determining that the cuts in the school foundation program resulting from Executive Order 82-3 were made pursuant to § 25(B) of Am. Sub. H.B. No. 694, 114th General Assembly and hence lawful."

Since both assignments of error deal with the question of whether Executive Order 82-3 lawfully reduced the amount of funds available for the school foundation program in fiscal year 1981-1982, they shall be considered together. When ruling on a motion for judgment on the pleadings under Civ. R. 12(C), the trial court is required to construe all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the party against whom the motion was brought. *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161 [63 O.O.2d 262]. A motion for judgment on the pleadings presents simply a question of law and the court may look only to the allegations in the pleadings to decide the motion. Plaintiffs contend that the Governor was without authority to order reductions in distributions through the school foundation program under R.C. 126.08, and that, while Am. Sub. H.B. No. 694 does grant the Governor the authority to make such cuts, Executive Order 82-3 did not comply with the requirements specified therein.

R.C. 126.08 states in part:

"If the governor ascertains that the available revenue receipts and balances for the current fiscal year will in all probability be less than the appropriations for the year, he shall issue such orders to the respective departments, offices, and institutions as will prevent their expenditures and incurred obligations from exceeding the said revenue receipts and balances."

In *Bd. of Ed.* v. *Gilligan* (1973), 36 Ohio App. 2d 15 [65 O.O.2d 51], affirmed on other grounds (1974), 38 Ohio St. 2d 107, this court ruled that R.C. 125.09 (now R.C. 126.08), does not give the Governor the authority to reduce the amount of funds allocated to school districts under the school foundation program and R.C. Chapter 3317. From an interpretation of the language in R.C. 125.09, this court was unable to conclude that the General Assembly intended to include those monies "distributed," "appropriated," or "allocated" pursuant to R.C. Chapter 3317 within the general authority granted to the Governor, under R.C. 125.09, to reduce "expenditures" and "incurred obligations." Thus, in the absence of some other mandate from the General Assembly, the Governor could not, under R.C. 125.09, order a reduction in the amount of funds to be allocated to local school districts through the school foundation program.

However, in the instant case, Section 25 of Am. Sub. H.B. No. 694, as set forth above, specifically allows the Governor to reduce state aid payments under R.C. Chapter 3317 through the issuance of an executive order promulgated under R.C. 126.08. Therefore, this court's decision in *Gilligan* is inapplicable to the case at bar since the legislature has expressed its intentions in Am. Sub. H.B. No. 694 to allow the Governor to reduce the amount of funds available under the school foundation program through an order issued pursuant to R.C. 126.08. So long as Executive Order 82-3 complied with the requirements in Am. Sub. H.B. No. 694, it

was binding upon the Superintendent of Public Instruction.

It is plaintiffs' contention that Am. Sub. H.B. No. 694 authorizes the Governor to reduce state aid payments to school districts through the issuance of an order pursuant to R.C. 126.08 only if the language of the order specifically "requires the superintendent to reduce such state aid payments to school districts." Executive Order 82-3, while specifically ordering spending reductions in all "departments, offices, agencies, institutions, boards and commissions," except those specifically listed in the order as being excluded, made no specific reference to a reduction in aid payments to school districts. Therefore, plaintiffs assert that Executive Order 82-3 failed to meet the requirements in Am. Sub. H.B. No. 694 to effectively reduce the amount of funds allocated to school districts under R.C. Chapter 3317.

The Department of Education under R.C. 3301.13 was created as "the administrative unit and organization through which the policies, directives, and powers of the State Board of Education and the duties of the Superintendent of Public Instruction are administered * * *." R.C. 3317.01 provides that the State Board of Education shall administer the school foundation program pursuant to R.C. Chapter 3317. Under R.C. 3301.11, the Superintendent of Public Instruction serves as the executive administrative officer of the State Board of Education and it is the superintendent's responsibility to execute the educational policies, orders and administrative functions of the board. It is also the duty of the superintendent under R.C. 3317.01 to calculate the amounts payable to each school district under the school foundation program. In Executive Order 82-3, the Governor required all executive and administrative departments, unless expressly excluded therein, to reduce their expenses by the amounts and in the manner determined by the Director of the Office of Budget and Management. State aid payments to school districts through the school foundation program were not specifically listed as exempt. Although the language in Section 25 of Am. Sub. H.B. No. 694, "to reduce such state aid payments to school districts," was not expressly included in the Governor's order, the clear intent of the order was to require a reduction in spending in all departments except those specifically mentioned as excluded.

The Governor's order to reduce state spending, issued pursuant to R.C. 126.08, had the effect of a legislative enactment and, therefore, the ordinary rules of statutory construction may be applied. Under the maxim *expressio unius est exclusio alterius,* "* * * the mention of one thing implies the exclusion of another." *Green, Inc.* v. *Smith* (1974), 40 Ohio App. 2d 30, at 32 [69 O.O.2d 17]. As in the case of *State, ex rel. Miller Plumbing Co.,* v. *Indus. Comm.* (1948), 149 Ohio St. 493 [37 O.O. 197], the Supreme Court, in applying the maxim *expressio · unius est exclusio alterius,* held that, where a specific safety requirement adopted by the Industrial Commission is made applicable to employers in a specific industry or occupation, it is not applicable to other employers in separate and distinct types of employment unless expressly stated by the commission in an order or rule.

Of course, the maxim *expressio unius est expressio alterius* is not a rule of law but, rather, is a rule of construction and requires caution in its application. As pointed out by the Supreme Court in *State, ex rel. Curtis,* v. *DeCorps* (1938), 134 Ohio St. 295, at 299 [12 O.O. 96], "* * * '* * * [l]ike other canons of statutory construction it is only an aid in the ascertainment of the meaning of the law and must yield whenever a contrary intention on the part of the lawmaker is apparent. * * *'" However, when am-

biguities exist, it may be used to aid the court in determining the intentions behind a certain provision. *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 164 [38 O.O.2d 404]. Here, we are unable to find any language within the order that would indicate an intention on the part of the Governor to exclude the funds allocated to school districts pursuant to the school foundation program and R.C. Chapter 3317. A review of Executive Order 82-3 reveals that the Governor did consider certain appropriations separately in determining the extent of the reductions. Specific exceptions were made in the order for appropriations for "debt service, the Sagamore Hills Children's Psychiatric Hospital, Dayton Children's Psychiatric Hospital, Central Ohio Adolescent Center * * * [and] Millcreek Psychiatric Center for Children * * *." It could reasonably be concluded that, if the Governor had intended to exclude appropriations for the school foundation program from Executive Order 82-3, such an exception would have been included in the order, along with the other specific appropriations mentioned. Accordingly, plaintiffs' two assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and MOYER, JJ., concur.