THE STATE OF OHIO, APPELLANT, *v.* TOOLEY, APPELLEE.

[Cite as *State v. Tooley,* 114 Ohio St.3d 366, 2007-Ohio-3698.]

(Nos. 2006–0105 and 2006–0216—Submitted December
13, 2006—Decided July 25, 2007.)

LANZINGER, J.

{¶ 1} We accepted the state of Ohio's discretionary appeal[1] and consolidated it with a certified conflict[2] to determine whether the portions of R.C. 2907.322 and 2907.323 that ban possession of child pornography are unconstitutionally overbroad in light of *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 2} We hold that R.C. 2907.322 and 2907.323 are not overbroad. The evidentiary inference that is permitted under R.C. 2907.322(B)(3) merely allows a fact-finder to consider circumstantial evidence to determine that the person depicted is a minor. The state must prove all elements beyond a reasonable doubt, including that a real child is depicted, to support a conviction for possession of child pornography under either R.C. 2907.322 or 2907.323.

## I. Case Background

{¶ 3} Appellee, Roger L. Tooley Jr., was indicted on December 3, 2003, by the Portage County Grand Jury on seven second-degree felony counts and nine fifth-degree felony counts of illegal use of a minor in nudity-oriented material or performance, violations of R.C. 2907.323(A)(1) and (3), and nine fourth-degree felony counts of pandering sexually oriented matter involving a minor, violations of R.C. 2907.322(A)(5), after images of child pornography were found on his computer.[3] Tooley's motion to dismiss the charges on grounds that the statutes under which he was indicted are unconstitutional was denied by the common pleas court.[4] At a bench trial, six counts were dismissed at the end of the state's case-in-chief. Tooley was convicted of two fifth-degree felony counts under R.C. 2907.323(A)(3) and three fourth-degree felony counts under R.C. 2907.322(A)(5) and was found not guilty on the remaining counts. He was sentenced to five concurrent ten-month prison terms that were to be served consecutively to a six-month term for a conviction in a companion case.[5]

---

1. Case No. 2006–0105.

2. Case No. 2006–0216.

3. Tooley's computer had been seized initially pursuant to a search warrant as a result of a computer-hacking incident at Kent State University. While looking for evidence of improper access to Social Security numbers, a computer forensic specialist discovered a folder containing images with file names indicative of child pornography. A second search warrant was issued, and the images at issue in this case were found during the execution of that warrant.

4. The record does not reflect that the trial court actually ruled on Tooley's motion to dismiss although during trial, the judge commented, "The Court has already ruled the statute on its face is constitutional."

5. Tooley's conviction for unauthorized use of computer or telecommunication property is not before us.

{¶ 4} The Eleventh District Court of Appeals reversed and remanded for a judgment of acquittal to be entered, holding that the statutes are unconstitutionally overbroad. The court concluded that R.C. 2907.322 criminalizes virtual child pornography, which the United States Supreme Court determined is protected by the First Amendment, *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, and that R.C. 2907.323(A)(3) chills a significant amount of protected speech. It also held that the state should be required to prove that a defendant knew that an image depicted a real child before being convicted of possessing child pornography. In addition, the court held that Tooley's convictions were not supported by sufficient evidence.

{¶ 5} The state appealed, and the Eleventh District certified its holding as being in conflict with holdings from the Fifth, Eighth, and Ninth Appellate Districts.[6] We determined that a conflict exists over the effect that *Ashcroft v. Free Speech Coalition* has on the state statutes at issue: specifically, whether the statutory inference provided in R.C. 2907.322(B)(3) renders R.C. 2907.322(A)(5) unconstitutionally overbroad and whether the culpable mental state of recklessness renders R.C. 2907.323(A)(3) unconstitutionally overbroad. We also accepted the state's discretionary appeal, which raised those same constitutional issues as well as an additional proposition that the state's presentation of an image alone is sufficient to support a conviction under R.C. 2907.322 and 2907.323.

{¶ 6} The cases were consolidated for briefing, oral argument, and decision.

{¶ 7} Before analyzing these statutes under the First Amendment, we must place them in context by first looking at the state's ability to regulate speech.

## II. The First Amendment and Pornography and Obscenity

{¶ 8} The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects freedom of speech, as does Section 11, Article I of the Ohio Constitution.[7] Nevertheless, not all speech has absolute constitutional protection, and obscenity and child pornography are but two categories of unprotected speech.[8] Although the terms "obscenity" and

---

6. *State v. Eichorn*, 5th Dist. No. 02 CA 953, 2003-Ohio-3415, 2003 WL 21489413; *State v. Anderson*, 151 Ohio App.3d 422, 2003-Ohio-429, 784 N.E.2d 196; and *State v. Morris*, 9th Dist. No. 04CA0036, 2005-Ohio-599, 2005 WL 356801.

7. Section 11, Article I of the Ohio Constitution provides, "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."

8. See, e.g., *Schenck v. United States* (1919), 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (words creating a "clear and present danger that they will bring about the substantive evils that Congress has a right to prevent"); *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 ("fighting words," i.e. words that are likely to incite imminent violence); *Beauharnais v.*

"pornography" are sometimes used interchangeably, they have different meanings.

## A. Definitions of Terms

{¶ 9} In *Miller v. California* (1973), 413 U.S. 15, 18, 93 S.Ct. 2607, 37 L.Ed.2d 419, fn. 2., when articulating its definition of obscenity, the United States Supreme Court noted that the word "obscene" means " '[o]ffensive to the senses, or to taste or refinement; disgusting, repulsive, filthy, foul, abominable, loathsome,' " quoting VII Oxford English Dictionary (1933) 26, while the term "pornography," derived from the Greek (*porne*, harlot, and *graphos*, writing), means " 'a depiction (as in writing or painting) of licentiousness or lewdness: a portrayal of erotic behavior designed to cause sexual excitement,' " quoting Webster's Third New International Dictionary (3d Ed.1986) 1767. Sexually explicit or sexually oriented images may fall within the category of pornography, but not all pornography is "obscene." *Miller* set forth an obscenity test that requires the government to prove that the work, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. Id. at 24, 93 S.Ct. 2607, 37 L.Ed.2d 419. States have broad powers to regulate distribution of obscene material, but not the private possession of it in one's home. *Stanley v. Georgia* (1969), 394 U.S. 557, 567–568, 89 S.Ct. 1243, 22 L.Ed.2d 542.

{¶ 10} Child pornography, namely, pornography produced by the use of real children, however, is a distinct matter. The creation of an exception to protected speech under the First Amendment for child pornography occurred in *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113. In that case, the United States Supreme Court recognized the government's compelling and substantial interest in safeguarding the physical and psychological well-being of its children and in preventing their sexual exploitation. Id. at 756–757, 102 S.Ct. 3348, 73 L.Ed.2d 1113. The *Ferber* court considered the physical or psychological harm to a child involved in the production of a work, the permanent record of the child's participation in the activity, the continued harm occurring through the circulation of the materials, and the material's de minimis literary or artistic value, to conclude that child pornography is not protected by the First Amendment. Id. at 758–765, 102 S.Ct. 3348, 73 L.Ed.2d 1113. It also held that a state may choose to regulate child pornography without requiring proof that the material is obscene under the *Miller* test. Id. at 760–761, 102 S.Ct. 3348, 73 L.Ed.2d 1113.

---

*Illinois* (1952), 343 U.S. 250, 266, 72 S.Ct. 725, 96 L.Ed. 919 (libel); *Roth v. United States* (1957), 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (obscenity); *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (child pornography).

{¶ 11} Furthermore, although the government may not criminalize possession of obscenity, it may criminalize the possession of child pornography, because consumers provide economic incentive for the production of the images. *Osborne v. Ohio* (1990), 495 U.S. 103, 110–111, 110 S.Ct. 1691, 109 L.Ed.2d 98. Every state now criminalizes possession of child pornography.[9]

## B. The Statutes in Question—R.C. 2907.322 and 2907.323

{¶ 12} Tooley's possession of sexually oriented images of minors led to his convictions under two separate Ohio child pornography statutes, R.C. 2907.322 and 2907.323.[10] R.C. 2907.322[11] defines the crime of pandering sexually oriented matter involving a minor and provides:

---

9. See Ala.Code 13A–12–192; Alaska Stat. 11.61.127; Ariz.Rev.Stat.Ann. 13–3553; Ark.Code Ann. 5–27–304; Cal.Penal Code 311.11; Colo.Rev.Stat.Ann. 18–6–403; Conn.Gen.Stat.Ann. 53a–196d through 196g; Del.Code Ann., Title 11, 1111; Fla.Stat.Ann. 827.071; Ga.Code Ann. 16–12–100; Hawaii Rev.Stat., Title 37, 707–752; Idaho Code Ann. 18–1507; Ill.Ann.Stat., Chapter 720, 5/11–20.1; Ind.Code Ann. 35–42–4–4; Iowa Code Ann. 728.12; Kan.Stat.Ann. 21–3516; Ky.Rev.Stat.Ann. 531.335; La.Rev.Stat., Title 14, 81.1; Me.Rev.Stat.Ann., Title 17–A, 284; Md.Code Ann. 11–208 (statute pertains only to possession of images of children who are under 16 years of age); Mass.Gen.Laws Ann., Chapter 272, 29C; Mich.Comp.Laws Ann. 750.145c; Minn.Stat. 617.247; Miss.Code Ann. 97–5–33; Mo.Ann.Stat. 573.037; Mont.Code Ann. 45–5–625; Neb.Rev.Stat. 28–813.01; Nev.Rev.Stat.Ann. 200.730 (statute pertains only to possession of images of children who are under 16 years of age); N.H.Rev.Stat.Ann. 649–A:3; N.J.Stat.Ann. 2C:24–4; N.M.Stat.Ann. 30–6A–3; N.Y.Penal Law 263.11 (statute pertains only to possession of images of children who are under 16 years of age); N.C.Gen.Stat.Ann. 14–190.17A; N.D.Cent.Code 12.1–27.2–04.1; Ohio R.C. 2907.322 and 2907.323; Okla.Stat.Ann. 1024.2; Ore.Rev.Stat.Ann. 163.686; Pa.Stat.Ann., Title 18, 6312; R.I.Gen.Laws Ann. 11–9–1.3; S.C.Code Ann. 16–15–410; S.D.Codified Laws 22–24A–3; Tenn.Code Ann. 39–17–1003; Tex.Penal Code Ann. 43.26; Utah Code Ann. 76–5a–3; Vt.Stat.Ann., Title 13, 2827; Va.Code Ann. 18.2–374.1:1; Wash.Rev.Code Ann. 9.68A.070; W.Va.Code Ann. 61–8C–3; Wis.Stat.Ann. 948.12; Wyo.Stat.Ann. 6–4–303.

10. The statutes do not use the term "pornography" and instead use words such as "sexual activity," "sexual conduct," and "sexual contact," which are terms defined in R.C. 2907.01.

11. {¶ a} R.C. 2907.322 provides:
    {¶ b} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
    {¶ c} "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;
    {¶ d} "(2) Advertise for sale or dissemination, sell, distribute, transport, disseminate, exhibit, or display any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;
    {¶ e} "(3) Create, direct, or produce a performance that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;
    {¶ f} "(4)Advertise for presentation, present, or participate in presenting a performance that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;
    {¶ g} "(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;

{¶ 13} "(A) No person, with knowledge of the character of the material or performance involved, shall * * *

{¶ 14} "(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality."

{¶ 15} This section has previously been upheld against a First Amendment attack. *State v. Meadows* (1986), 28 Ohio St.3d 43, 28 OBR 146, 503 N.E.2d 697.

{¶ 16} Tooley was also convicted of illegal use of a minor in a nudity-oriented material or performance, R.C. 2907.323(A)(3),[12] which provides that no person

---

{¶ h} "(6) Bring or cause to be brought into this state any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality, or bring, cause to be brought, or finance the bringing of any minor into or across this state with the intent that the minor engage in sexual activity, masturbation, or bestiality in a performance or for the purpose of producing material containing a visual representation depicting the minor engaged in sexual activity, masturbation, or bestiality.

{¶ i} "(B)(1) This section does not apply to any material or performance that is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

{¶ j} "(2) Mistake of age is not a defense to a charge under this section.

{¶ k} "(3) In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor.

{¶ l} "(C) Whoever violates this section is guilty of pandering sexually oriented matter involving a minor. Violation of division (A)(1), (2), (3), (4), or (6) of this section is a felony of the second degree. Violation of division (A)(5) of this section is a felony of the fourth degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section or section 2907.321 or 2907.323 of the Revised Code, pandering sexually oriented matter involving a minor in violation of division (A)(5) of this section is a felony of the third degree."

12. {¶ a} R.C. 2907.323 provides:

{¶ b} "(A) No person shall do any of the following:

{¶ c} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:

{¶ d} "(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;

{¶ e} "(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.

{¶ f} "(2) Consent to the photographing of the person's minor child or ward, or photograph the person's minor child or ward, in a state of nudity or consent to the use of the person's minor child

shall "[p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity." This prohibition is followed by the defenses that the possessor had a proper purpose[13] or knew that the minor's parent consented in writing to the photographing of the minor in a state of nudity and to the manner in which the material was used or transferred.[14] In a case challenging the constitutionality of R.C. 2907.323(A)(3), this court construed the statute as reaching only nudity that either constitutes a lewd exhibition or involves a graphic focus on the genitals. *State v. Young* (1988), 37 Ohio St.3d 249, 251–252, 525 N.E.2d 1363. The United States Supreme Court agreed that under the *Young* interpretation, the statute did not violate the First Amendment. *Osborne*, 495 U.S. 103, 112–114, 110 S.Ct. 1691, 109 L.Ed.2d 98.

{¶ 17} Although the statutes at issue have been determined to be constitutional, Tooley argues that *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, and advancements in technology require a different result. We disagree.

---

or ward in a state of nudity in any material or performance, or use or transfer a material or performance of that nature, unless the material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;

{¶ g} "(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

{¶ h} "(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

{¶ i} "(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

{¶ j} "(B) Whoever violates this section is guilty of illegal use of a minor in a nudity-oriented material or performance. Whoever violates division (A)(1) or (2) of this section is guilty of a felony of the second degree. Whoever violates division (A)(3) of this section is guilty of a felony of the fifth degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section or section 2907.321 or 2907.322 of the Revised Code, illegal use of a minor in a nudity-oriented material or performance in violation of division (A)(3) of this section is a felony of the fourth degree."

13. R.C. 2907.323(A)(3)(a).

14. R.C. 2907.323(A)(3)(b).

## III. Application of *Ashcroft*

{¶ 18} Before we analyze this case under the *Ashcroft* standard, it is important to clarify a few key terms. "Child pornography" or "actual child pornography" means pornography that is produced by the use of real children. "Virtual child pornography," as examined by *Ashcroft,* means pornography that depicts children, but through images that are either entirely computer-generated or that are created using only adults. Closely related to virtual child pornography is "morphed child pornography," which is created by altering a real child's image to make it appear that the child is engaged in some type of sexual activity. We will use the term "simulated child pornography" to include both "virtual child pornography" and "morphed child pornography."

### A. Facts of *Ashcroft*

{¶ 19} *Ashcroft* involved a challenge to the Child Pornography Prevention Act of 1996 ("CPPA"), Section 2251 et seq., Title 18, U.S.Code, which had broadened the definition of child pornography to reach sexually explicit images that appeared to depict minors but were produced without using any real children ("virtual child pornography"). The United States Supreme Court held unconstitutional two new sections of the CPPA. "Section 2256(8)(B) prohibit[ed] 'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture' that 'is, or appears to be, of a minor engaging in sexually explicit conduct.'" *Ashcroft,* 535 U.S. at 241, 122 S.Ct. 1389, 152 L.Ed.2d 403. "Section 2256(8)(D) define[d] child pornography to include any sexually explicit image that was 'advertised, promoted, presented, described, or distributed in such a manner that conveys the impression' it depicts 'a minor engaging in sexually explicit conduct.'" Id. at 242, 122 S.Ct. 1389, 152 L.Ed.2d 403. The court held that these provisions were unconstitutionally overbroad because they criminalized material that was neither obscene under *Miller* nor sufficiently related to the abuse of a minor during its production process as described by *Ferber.* Id. at 246, 250, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 20} Significantly, however, the court's opinion did not address Section 2256(8)(C), Title 18, U.S.Code, which prohibits a more common and lower tech means of creating fake images, known as computer morphing. *Ashcroft,* 535 U.S. at 242, 122 S.Ct. 1389, 152 L.Ed.2d 403. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. The *Ashcroft* court excluded this category from consideration, stating, "Although morphed images may fall within the definition of virtual child pornography, *they implicate the interests of real children and are in that sense closer to the images in Ferber.* Respondents do not challenge this provision, and *we do not consider it.*" (Emphasis added.) Id. at 242, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 21} *Ashcroft* limited the government's power to regulate the production and possession of virtual child pornography. The court rejected the following government arguments: that virtual and actual child pornography are indistinguishable, so that the former must be banned to reach the latter; that child pornography can rarely be valuable speech; that pedophiles could potentially use the images to engage minors in sexual activity; that virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct; that eliminating the market for pornography produced using real children necessitates a prohibition on virtual images; and finally, that child pornography prosecutions would become difficult if virtual images were not regulated by the CPPA. *Ashcroft*, 535 U.S. at 250–255, 122 S.Ct. 1389, 152 L.Ed.2d 403. In short, the United States Supreme Court did not accept the proposition that virtual child pornography should be a new category of unprotected speech under the First Amendment. Id. at 246, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 22} Because all of Tooley's challenges to the Ohio statutes rest on the hypothesis that fake images cannot be distinguished from images of real children, we must first examine the record for the validity of that assumption.

### B. The Record in Tooley's Case

{¶ 23} At trial, Tooley's expert witness testified that simulated child pornography is indistinguishable from actual child pornography and that it is not possible for any person to have knowledge that an actual child is depicted in any image that the person possesses, unless the person also created it. The expert witness repeatedly gave his opinion that it is impossible to determine by looking at a digital image whether it has been altered or entirely computer generated. He testified about the possible methods of manipulating digital images, such as cropping, changing brightness or contrast, copying one image into another, inserting images into an existing image, modifying color, and blurring. He demonstrated for the judge that, using software, he could alter downloaded digital images of adults so that they appeared to depict minors and could combine images of actresses under the age of 18 with images of topless or nude adult females so that the actresses appeared to be nude.

{¶ 24} The expert's demonstration, however, does not establish that *Ashcroft* renders Ohio's child pornography statutes unconstitutional. *Ashcroft* left open the question of whether use of a real child's image to create a depiction of nudity or sexual activity is unprotected speech. As noted earlier, the court expressly avoided discussing the constitutionality of morphed images, but stated that "they implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Ashcroft*, 535 U.S. at 242, 122 S.Ct. 1389, 152 L.Ed.2d 403. We will not extend *Ashcroft* to cover morphed child pornography when the United States Supreme Court did not do so.

{¶ 25} At trial, the defense expert did not view any of the images found in Tooley's computer before testifying and did not opine on whether they had been digitally manipulated. He admitted on cross-examination that he had never seen a compressed multimedia file (".mpg file")—a file that can include video and audio—that had been modified, although at least one of the images Tooley was charged with possessing was an .mpg file. Nor did the expert testify about images that were entirely computer-generated. The testimony of this witness is relevant only to the extent that he discussed images of adults being manipulated to appear to be minors. But he did not testify as to whether pornographic images or videos that simply *appear* to depict actual children are widely available. In short, he testified about what could be done with current technology, rather than what actually had been done.

{¶ 26} Although appellee argues and the court of appeals seems to have accepted the premise that digital images of simulated and actual child pornography visually are the same, the record is far from establishing this as fact. The record does not show that the trial court ruled that digital-imaging technology is at the point where a person cannot know by viewing an image whether it is legal (virtual child pornography) or illegal (actual child pornography). A general judgment entry of conviction was entered, there is no transcript in the record of the hearing at which the judge rendered his decision, and there are no findings of fact by the court.[15] There is no evidence that the court accepted the expert's testimony that simulated and actual child pornography are indistinguishable. The trial court dismissed six counts (involving two different images) on the defendant's Crim.R. 29 motion because it could not determine the age of the persons depicted. After all the evidence was submitted, the trial court found Tooley not guilty on 14 counts (six separate images, including two video clips) and guilty on five counts (three separate images).

{¶ 27} Even if Tooley's expert's testimony is credited to the extent that it establishes that images of real children may be altered or "morphed" without detection, however, this is not the type of protected material that is discussed in *Ashcroft*. The evidence in this record is insufficient to establish that it is absolutely impossible to distinguish between simulated and actual child pornography.

### IV. The Overbreadth Challenge

{¶ 28} The Eleventh District characterized the inference permitted under R.C. 2907.322(B)(3) as "nearly identical" to the "appears to be" language struck down as unconstitutional in *Ashcroft*. *State v. Tooley*, Portage App. No. 2004–P–0064,

---

15. The state's request for findings of fact and conclusions of law was withdrawn, and Tooley never requested them.

2005-Ohio-6709, 2005 WL 3476649, ¶ 52, 54.   It also held that R.C. 2907.323(A)(3) is unconstitutionally overbroad because it chills a significant amount of protected speech.   Id. at ¶ 70.   The Fifth and Ninth Districts have rejected overbreadth challenges to both R.C. 2907.322(A)(5) and 2907.323(A)(3), and the Eighth District has rejected an overbreadth challenge to R.C. 2907.322(A)(5).[16]   We agree with the analyses made by the Fifth, Eighth, and Ninth Districts and reject that of the Eleventh District.

## A.   Standard of Review

{¶ 29} We acknowledge at the outset that acts of the General Assembly enjoy a strong presumption of constitutionality.   *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St.2d 159, 161, 38 O.O.2d 404, 224 N.E.2d 906.   Thus, a statute will be upheld unless proven beyond a reasonable doubt to be clearly unconstitutional.   *State v. Warner* (1990), 55 Ohio St.3d 31, 43, 564 N.E.2d 18, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.   " 'A clear and precise enactment may * * * be "overbroad" if in its reach it prohibits constitutionally protected conduct.'   [*Grayned v. Rockford* (1972)], 408 U.S. [104,] 114, 92 S.Ct. [2294,] 33 L.Ed.2d [222].   In considering an overbreadth challenge, the court must decide 'whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.'   Id., 408 U.S. at 115, 92 S.Ct. at 2302, 33 L.Ed.2d at 231."   *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 387, 618 N.E.2d 138.

{¶ 30} A statute will be invalidated as overbroad only when its overbreadth has been shown by the defendant to be substantial.   *Ferber*, 458 U.S. at 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113.   We recognize that in construing legislative enactments, courts are bound to interpret them in such a way that they are constitutional, if it is reasonably possible to do so.   *State ex rel. Dickman*, 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59; *State ex rel. Jackman*, 9 Ohio St.2d 159, 38 O.O.2d 404, 224 N.E.2d 906.

## B.   The Permissive Inference under R.C. 2907.322(B)(3)

{¶ 31} Tooley challenges the inference that is permitted under R.C. 2907.322(B)(3), claiming that it allows R.C. 2907.322(A)(5) to ban possession of what is protected speech.   R.C. 2907.322(B)(3) states, "In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title,

---

16.   *State v. Eichorn*, 5th Dist. No. 02 CA 953, 2003-Ohio-3415, 2003 WL 21489413; *State v. Morris*, Ninth Dist. No. 04CA0036, 2005-Ohio-599, 2005 WL 356801; *State v. Anderson*, 151 Ohio App.3d 422, 2003-Ohio-429, 784 N.E.2d 196.

text, visual representation, or otherwise, represents or depicts the person as a minor."[17]  Tooley argues that this language is similar to the CPPA provisions struck down in *Ashcroft,* which provided that the definition of child pornography included any visual depiction of sexually explicit conduct where "(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;  (B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;  (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct;  or (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct."  Former Section 2256(8), Title 18, U.S.Code, Pub.L. No. 104–208, 110 Stat. 3009.

{¶ 32} We are not persuaded by Tooley's reading, because the statute can be construed to comply with the First Amendment.  See *Osborne,* 495 U.S. at 112–113, 110 S.Ct. 1691, 109 L.Ed.2d 98.  It is important to remember that the two previous CPPA sections that were determined to be unconstitutional had been added *as part of the definition* of "child pornography."  The additions were designed to expand the reach of the federal statute to any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct" and to any image that "conveys the impression" that it depicts a minor.

{¶ 33} The permissive inference under Ohio's statute, on the other hand, simply allows what the common law has always permitted; that is, it allows the state to prove its case with circumstantial evidence.  *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.  Unlike former Section 2256(8), Title 18, U.S.Code, R.C. 2907.322(B)(3) does not equate virtual child pornography, which is protected under the First Amendment, with actual child pornography, which is not protected.  Courts of appeals other than the Eleventh District have determined that R.C. 2907.322 is different from the CPPA provisions because the Ohio statute has never been interpreted to prohibit child pornography that is created without the use of real children.[18]  The permissive inference under R.C. 2907.322(B)(3) is not an addition to the definition of "child pornography," but is merely an evidentiary tool.

---

17.  R.C. 2907.321(B)(3), which concerns the crime of pandering obscenity involving a minor, contains the same inference language that R.C. 2907.322(B)(3) contains.

18.  *State v. Huffman,* 165 Ohio App.3d 518, 2006-Ohio-1106, 847 N.E.2d 58, ¶ 28–29;  *State v. Eichorn,* 5th Dist. No. 02CA953, 2003-Ohio-3415, 2003 WL 21489413, ¶ 24;  *State v. Morris,* 9th Dist. No. 04CA0036, 2005-Ohio-599, 2005 WL 356801, ¶ 16;  *State v. Steele,* 12th Dist. No. CA2003–11–276, 2005-Ohio-943, 2005 WL 516526, ¶ 20.

{¶ 34} To illustrate the distinction, under the CPPA as examined in *Ashcroft*, even if a defendant could prove that an adult rather than a child was depicted or that an image was wholly computer-generated, possession of an image that "appeared" to depict or "convey[ed] the impression" that it depicted a minor would lead to a conviction. In other words, whether the image was of a real child did not matter; the image's appearance or how it was presented was conclusive.

{¶ 35} To the contrary, R.C. 2907.322(B)(3) merely permits, and does not require, a fact-finder to infer from circumstantial evidence the age of the person in an image. The state still must prove all elements beyond a reasonable doubt, including that a real child is depicted, to support a conviction for possession of child pornography under R.C. 2907.322. In a state prosecution, the inference will not override the actual content of the image. If the evidence establishes that the defendant possessed an image generated without the use of a child, the defendant should be acquitted. Despite any appearance or representation, if no actual minor is depicted, there is no violation of R.C. 2907.322.

### C. Mental State Required by R.C. 2907.323

{¶ 36} Tooley argues that applying a recklessness standard to R.C. 2907.323 makes the statute overbroad. He also contends that because of modern technology, a person cannot know whether an image depicts an actual minor and that his right to virtual child pornography is chilled when the state prosecutes for possession under the statute. R.C. 2907.323 prohibits a person from possessing or viewing any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless it is for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose or the person knows that the parents have consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

{¶ 37} Because R.C. 2907.323 does not specify any degree of culpability, the degree of culpability required to commit the offense is recklessness. *State v. Young*, 37 Ohio St.3d at 253, 525 N.E.2d 1363. R.C. 2901.22(C) defines "recklessly" as follows: "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." The United States Supreme Court previously upheld our use of the mental standard of recklessness with respect to R.C. 2907.323. *Osborne*, 495 U.S. at 115, 110 S.Ct. 1691, 109 L.Ed.2d 98.

{¶ 38} Tooley nonetheless contends that mere notice of the purported content of the material possessed is no longer sufficient after *Ashcroft*. He argues that

because technology now prevents someone from being able to distinguish between actual and simulated child pornography, the images he possessed may not be of a real child, and therefore the state must prove that he "knowingly" possessed actual child pornography.

{¶ 39} If Tooley had established that a substantial amount of virtual pornography exists, his argument that the mens rea needed for conviction should be more than reckless might be more persuasive. The record, however, is devoid of anything but speculation that a substantial amount of virtual child pornography exists. The Eleventh District concluded baldly that the statutes made a "significant amount" of constitutionally protected conduct unlawful. *Tooley,* 2005-Ohio-6709, 2005 WL 3476649, ¶ 70. But no evidence was presented that Tooley had even attempted to obtain virtual child pornography or adult pornography. His five convictions arose from pictures titled *"illegal 128.jpg"* and *"asian preteen lolita incest ddoggprn! 9fuksis (incest kiddy rape).jpg"* and a video clip titled *"08yo_innocent_girl_blowjob_(0.05).mpg."* Nothing in the record suggested that either digital image or the video clip did not depict actual minors.

{¶ 40} Applying a mental culpability standard of recklessness to R.C. 2907.323 does not cause a substantial amount of protected speech to be prohibited. One who is accused of a violation of R.C. 2907.323 must have notice of the character of the material possessed, *Young,* 37 Ohio St.3d at 253, 525 N.E.2d 1363, which the state may show through circumstantial evidence. To show recklessness, the state may offer evidence such as the Internet search terms the defendant employed to find the child pornography, the text on the website where the pornography was found, the file names and titles of the images, as well as whether an identifiable victim is portrayed, and any technological information regarding the images themselves.

{¶ 41} Even under a recklessness standard, a defendant will be guilty of possessing child pornography under R.C. 2907.323 only if the image depicts a real person under the age of 18 in a state of nudity where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals.

### D.  Affirmative Defense

{¶ 42} The United States Supreme Court also found fault with subsections 2256(8)(B) and (D) of the CPPA because those subsections impermissibly swept protected speech into the category of unprotected speech and did not allow an affirmative defense to apply to possession of virtual child pornography. *Ashcroft,* 535 U.S. at 256, 122 S.Ct. 1389, 152 L.Ed.2d 403. Under former Section 2256(8)(D), Title 18, U.S.Code, a defendant's conviction turned on what the material purported to be, and not on what was actually depicted. *Ashcroft,* 535 U.S. at 257, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 43} The state statutes at issue provide protection for those who have a proper purpose for possessing images of children in a state of nudity. Unlike the CPPA, which "prohibit[ed] speech despite its serious literary, artistic, political, or scientific value," [19] Ohio has a "proper purpose" exception, which applies to both R.C. 2907.322 and 2907.323. Defendants may avoid convictions when their otherwise prohibited material is possessed for a "bona fide medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a * * * person having a proper interest in the material." R.C. 2907.322(B)(1) and 2907.323(A)(3)(a).

{¶ 44} If we accepted Tooley's position that R.C. 2907.322 and 2907.323 are overbroad and that the affirmative defense does not alleviate some of the concerns *Ashcroft* expressed regarding the criminalization of works such as Romeo and Juliet, the state would be unable to prosecute for possession of child pornography. Unless the accused had been present when the illicit image was "captured" or the state was able to identify the actual child victim and have that victim testify, prosecutions would be impossible in cases where images are downloaded from the Internet.

{¶ 45} All of Tooley's arguments founder on the assumption that simulated child pornography is indistinguishable from actual child pornography and, furthermore, is so prevalent that there is an unacceptable risk that a person will be convicted for possessing pornography not involving minors. Moreover, morphed child pornography that uses images of real children, which was discussed by Tooley's expert, is not covered by the *Ashcroft* definition of protected virtual child pornography. Tooley has not met his burden of establishing that a substantial amount of protected speech is covered by these Ohio statutes. Because R.C. 2907.322 and 2907.323 are designed to reach material involving actual children, as the majority of appellate courts have held, they do not run afoul of the First Amendment.

{¶ 46} We hold that the permissive inference of R.C. 2907.322(B)(3) does not render R.C. 2907.322(A)(5) unconstitutionally overbroad by equating virtual child pornography, which is protected expression under the First Amendment, with pornography that involves real children, which is not protected. We further hold that application of the culpable mental state of recklessness to R.C. 2907.323(A)(3), which prohibits possession of certain images of minors in a state of nudity, does not render the statute unconstitutionally overbroad.

## V. Proof Required

{¶ 47} Acknowledging that its decision regarding the constitutionality of R.C. 2907.322 and 2907.323 might be reversed, the Eleventh District considered

---

19. *Ashcroft*, 535 U.S. at 246, 122 S.Ct. 1389, 152 L.Ed.2d 403.

Tooley's second assignment of error, which asserted that the trial court had erred by permitting the state to present hearsay testimony by Gabrielle Hagan, an agent of the Department of Homeland Security. Hagan had identified by name and age three of the children in the images found on Tooley's computer. She had obtained this information by comparing the images found to those in a database of known victims.

{¶ 48} The court of appeals held that Hagan's testimony was inadmissible hearsay and concluded that without her testimony, the state had failed to meet its burden of demonstrating that the images contained real children. *Tooley*, 2005-Ohio-6709, 2005 WL 3476649 at ¶ 99–100. Thus, it found that there was insufficient evidence to support Tooley's convictions. The state has not challenged the exclusion of Hagan's testimony and instead asks us to determine whether the images themselves are sufficient evidence to support convictions under R.C. 2907.322 and 2907.323.

{¶ 49} The state must prove beyond a reasonable doubt that a real child is depicted, to support a conviction for possession of child pornography under either R.C. 2907.322 or 2907.323. In most cases, meeting this burden will require presentation of the images themselves. Expert witnesses may not be needed if the state's assertion that an actual child is involved goes unchallenged. The Eleventh District's conclusion that experts cannot distinguish between actual and virtual child pornography and that "asking a jury to make a determination merely by looking at the image is patently unfair to the defendant" is not supported by the record here. *Tooley*, 2005-Ohio-6709, 2005 WL 3476649, ¶ 40.

{¶ 50} Tooley suggests that *Ashcroft* implicitly recognized that mere images alone are now insufficient to prove that a real child is involved. But *Ashcroft* did not impose a heightened evidentiary burden on the state to specifically identify the child or to use expert testimony to prove that the image contains a real child. Federal courts that have considered this issue agree. See, e.g., *United States v. Slanina* (C.A.5, 2004), 359 F.3d 356, 357; *United States v. Kimler* (C.A.10, 2003), 335 F.3d 1132, 1142 ("Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge"); *United States v. Deaton* (C.A.8, 2003), 328 F.3d 454, 455; *United States v. Hall* (C.A.11, 2002), 312 F.3d 1250, 1260.

{¶ 51} For example, in *United States v. Irving* (C.A.2, 2006), 452 F.3d 110, the court upheld a jury verdict convicting a defendant of possession of child pornography based on videos even though the government offered no proof beyond the videos themselves that the images were of real children. Id. at 122. Rejecting the argument that *Ashcroft* required the government to present evidence other than the unlawful images themselves, the court noted: "Although the Supreme Court noted the possible evidentiary difficulty of distinguishing virtual and actual

child pornography, it did not establish a bright-line rule requiring that the government proffer a specific type of proof to show the use of an actual child." *Irving*, 452 F.3d at 121, citing *Ashcroft*, 535 U.S. at 254–256, 122 S.Ct. 1389, 152 L.Ed.2d 403. *Ashcroft* does not lay down "the absolute requirement that, absent direct evidence of identity, expert testimony is required to prove that the prohibited images are of real, not virtual, children." *Kimler*, 335 F.3d at 1142; see, also, *United States v. Farrelly* (C.A.6, 2004), 389 F.3d 649, 653–654; *Slanina*, 359 F.3d at 357; *Deaton*, 328 F.3d at 455.

{¶ 52} These same courts also agree that juries are capable of distinguishing between real and virtual images without expert assistance. *Irving*, 452 F.3d at 122 (video images only); *Farrelly*, 389 F.3d at 654; *Slanina*, 359 F.3d at 357; *Kimler*, 335 F.3d at 1142; *Deaton*, 328 F.3d at 455.

{¶ 53} Tooley contends that the most a trier of fact could reasonably conclude from the images themselves is that they *appear* to depict real children, not that they do depict real children. He contends that his expert established that simulated and actual child pornography are indistinguishable and that as a result, he could never know whether he was violating the law in possessing what appears to be child pornography. This argument fails for two reasons. First, Tooley's expert never viewed the images at issue and expressed no opinion as to their content. Second, in *Ashcroft*, the United States Supreme Court rejected the government's claim that virtual images are indistinguishable from real ones. 535 U.S. at 254, 122 S.Ct. 1389, 152 L.Ed.2d 403. As we have observed, Tooley's expert, at most, showed that morphed images can look real. But because the category of morphed child pornography was not contained within *Ashcroft*'s consideration of virtual child pornography, and the expert never examined the images involved in this case, that matter was for the fact-finder to decide.

{¶ 54} The fact-finder in this case, the trial judge, was capable of reviewing the evidence to determine whether the state met its burden of showing that the images depicted real children. Several counts against Tooley were dismissed when the judge stated that he was unable to determine the age of the individuals depicted. With respect to the images supporting the convictions, this court has also viewed them and has concluded that real children were involved.

{¶ 55} We therefore hold that the state presented sufficient evidence to support Tooley's convictions.

## VI. Conclusion

{¶ 56} The Eleventh District, in reversing the trial court's judgment, concluded that technology has advanced to the point where simulated and actual digital images are indistinguishable, based on the testimony of a witness who did not view the images in this case. Furthermore, it applied *Ashcroft* to include

morphed images within the category of protected speech and reached beyond *Ashcroft*'s stated scope. The court of appeals also improperly equated the CPPA's unconstitutional provisions with Ohio's statutory provisions that simply permit a finder of fact to make an evidentiary inference. Finally, it relieved appellee of his burden to show that a substantial amount of protected speech was covered by the statute.

{¶ 57} For the foregoing reasons, we answer both questions posed by the certified conflict case in the negative, reverse the judgment of the Court of Appeals for Portage County, and remand the case to the trial court for proceedings consistent with this opinion.

Judgment reversed.

MOYER, C.J., SADLER, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

LISA L. SADLER, J., of the Tenth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

**LUNDBERG STRATTON, J., concurring.**

{¶ 58} While I concur in the reversal of the judgment of the court of appeals and the finding that Ohio's statutes are not unconstitutionally overbroad, I write separately to express my belief that *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, was wrongly decided and that we are rapidly approaching a time when it will become impossible to distinguish between virtual child pornography and actual child pornography. *Ashcroft* drew some sharp dissents, which point out the dangers of the decision. The First Amendment, while clearly a critical component of American jurisprudence, is not without boundaries. In my view, freedom of speech should not be elevated over protecting our children from exploitation and abuse.

{¶ 59} Congress, in enacting the Child Pornography Prevention Act of 1996 ("CPPA"), considered the effects that virtual child pornography might have both on children and on those who would abuse them. "The result of Congress's investigation was disturbing. Congress found that the effect of visual depictions of child sexual activity on a child molester or pedophile is the same whether the child pornography is made using actual children or consists of images which are virtually indistinguishable from photographic images of real children. The dangers to children are just as great whether the images are virtual or real. Virtual child pornography is often used to seduce children into sexual activity; it

enflames the desires of those who prey on children such that it increases the creation and distribution of child pornography and the sexual abuse and exploitation of actual children; it is used to stimulate and whet the sexual appetites of abusers, and serves as a model for sexual acting out with children; it desensitizes the viewer of the images to the pathology of sexual abuse or exploitation of children, so that it can become acceptable and even preferred by the viewer; it has a deleterious effect on all children because it encourages a societal perception of children as sexual objects, creating an unwholesome environment affecting the psychological, mental, and emotional development of children, and undermining efforts of parents and families to encourage the same." Watanabe, Real Problems, Virtual Solutions: The (Still) Uncertain Future of Virtual Child Pornography Legislation (2005), 10 Journal of Tech. Law & Policy 195, 203, and fn. 47, citing S.Rep. No. 104–358 at 2.

{¶ 60} In *Ashcroft*, the government argued that if virtual pornography were not banned, it would be very difficult to prosecute those who produce or possess actual child pornography because experts may have difficulty determining whether the images were made using real children or computer imaging. *Ashcroft*, 535 U.S. at 254, 122 S.Ct. 1389, 152 L.Ed.2d 403. The majority in *Ashcroft* dismissed these concerns, rejecting the argument that virtual child pornography should be a new category of unprotected speech under the First Amendment. I believe that *Ashcroft* turned the First Amendment upside down and will allow child pornography to flourish unabated. There are limits to First Amendment protections, and the right to possess virtual child pornography, in light of all the evidence of the damage it does to our children, should not be protected.

{¶ 61} Justice Thomas noted in his concurrence in *Ashcroft* that, in his view, the government's most persuasive asserted interest in support of the CPPA was the "prosecution rationale—that persons who possess and disseminate pornographic images of real children may escape conviction by claiming that the images are computer generated, thereby raising a reasonable doubt as to their guilt." *Ashcroft*, 535 U.S. at 259, 122 S.Ct. 1389, 152 L.Ed.2d 403. This is exactly what Tooley is now attempting to do. Further, Justice Thomas stated that "[w]hile this speculative interest cannot support the broad reach of the CPPA, technology may evolve to the point where it becomes impossible to enforce actual child pornography laws because the Government cannot prove that certain pornographic images are of real children. In the event this occurs, the Government should not be foreclosed from enacting a regulation of virtual child pornography that contains an appropriate affirmative defense or some other narrowly drawn restriction." *Id.*

{¶ 62} Justice Thomas's foresight regarding the effect *Ashcroft* would have on the government's ability to prosecute child-pornography crimes was accurate.

"After the decision, prosecutions have been brought in the Ninth Circuit only in the most clear-cut cases in which the government can specifically identify the child in the depiction or otherwise identify the origin of the image. These prosecutions represent only a fraction of meritorious child pornography cases." Broussard, *Ashcroft v. Free Speech Coalition*: Legislators Push for Policy Direction to Protect the Age of Innocence While the Court Turns a Deaf Ear (2004), 29 Thurgood Marshall L.Rev. 419, 433.

{¶ 63} Ernest E. Allen of the National Center for Missing and Exploited Children testified before Congress that " 'the Court's decision [in *Ashcroft* ] will result in the proliferation of child pornography in America, unlike anything we have seen in more than twenty years.' He expressed his concern that, after the Court's decision, pedophiles will still 'sexually victimize children' and 'photograph those acts,' but that they will morph and manipulate the images so that the children are not identifiable." (Citation omitted.) Milstead, *Ashcroft v. Free Speech Coalition:* How Can Virtual Child Pornography Be Banned Under the First Amendment? (2004), 31 Pepp.L.Rev. 825, 826, quoting Virtual Child Pornography: The Impact of the Supreme Court Decision in the case of *Ashcroft v. Free Speech Coalition*: Hearing Before the House Subcomm. on Crime, Comm. on the Judiciary, 107th Cong. 13–18 (2000).

{¶ 64} In the case at bar, I concur with the majority that the statutes are not unconstitutionally overbroad. In this case, Tooley failed to establish that a substantial amount of virtual child pornography exists or was an actual factor in his case. The majority points out that the record does not show that the trial court ruled that digital-imaging technology is at the point where a person cannot know by viewing an image whether it is legal (virtual child pornography) or illegal (actual child pornography). There also was no evidence that the court accepted the expert's testimony that simulated and actual child pornography are indistinguishable. But the time is near when virtual child pornography will be indistinguishable from actual child pornography. When that time comes, I sincerely hope that the United States Supreme Court will reconsider its decision that virtual child pornography is protected expression under the First Amendment. Otherwise, our law enforcement will be unable to protect the most vulnerable of our society—our children.

---

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellant.

Timothy J. Hart and Dean Boland, for appellee.

Marc Dann, Attorney General, and Stephen P. Carney, Senior Deputy Solicitor, urging reversal for amicus curiae Attorney General of Ohio.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Brendan J. Sheehan and Matthew E. Meyer, Assistant Prosecuting Attorneys, urging reversal for amicus curiae Ohio Internet Crimes Against Children Task Force.

William F. Schenck, Greene County Prosecuting Attorney, and Cheri L. Stout, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorney's Association.

Ian N. Friedman & Associates, L.L.C., and Ian N. Friedman, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.